UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

Robert Haddad,
    Plaintiff,

v.

Midwest Pipecoating, Inc.,
    Defendant.

## COMPLAINT

Comes now Plaintiff and files his complaint against Midwest Pipecoating, Inc. ("MWPC") for discrimination pursuant to Title VII and for retaliation after he complained of national origin discrimination. In support of his Complaint he states the following:

### JURISDICTION AND VENUE

1. This is an action for injunctive and declaratory relief brought on behalf of Mr. Haddad, an employee of MWPC. The plaintiff has suffered discrimination on the basis of his country of origin in violation of the Civil Rights Act of 1964 as amended ("Title VII"). If Defendant is not enjoined, Plaintiff will continue to be subjected to such discrimination.

2. This court has subject-matter jurisdiction of this complaint pursuant to 28 U.S.C.A. §§ 1331, and 1343(a)(4).

3. Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

4. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§ 2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

5. This cause of action arose in the Northern District of Indiana. Therefore, venue is proper under 28 U.S.C. Section 1391(b).

6. Venue is proper in this district pursuant to 28 U.S.C.A. § 1391 also because MWPC resides in Indiana, is an entity with the capacity to sue and be sued in its common name under applicable law and is subject to this court's personal jurisdiction.

FACTS COMMON TO ALL COUNTS

7. Plaintiff exhausted his administrative remedy with the United States Equal Employment Opportunity Commission prior to filing this suit. (**Ex. 1**).

8. On August 5, 1988 Mr. Haddad was born. He is of Jordanian and Syrian descent ("Middle Eastern").

9. Plaintiff began working for the defendant in February of 2019 after applying via Indeed to MWPC's advertisement. Plaintiff worked out of Defendant's Schererville office as an IT specialist.

10. As a condition of employment, MWPC required by HR Officer Jeff Clapman Plaintiff to complete an EEO survey declaring his demographics.

11. On February 14, 2019, Defendant required Plaintiff to file weekly task reports; He was the only person required to do such reporting.

12. On April 3, 2019, Plaintiff complains to Defendant's HR office and to one of his bosses about racial slurs being made against Plaintiff by a manager named Aaron Juarez. Specifically, Plaintiff advised that the manager was making Arab (AY-RAB) comments.

13. After Plaintiff complained, Defendant's manager phoned the plaintiff and informed the plaintiff specifically "I Don't know how you are going to make it here . . . your life is coming to an end here."

14. August 29, 2019 Plaintiff requests a screen blocker for his computer to ease the strain on his eyes, but his request was ignored.

15. On or about September 12, 2019 Mr. Haddad makes an expense request of manager Juarez. Defendant's manager purposely did not reply.

16. On or about September 12, 2019, Plaintiff complains a second time to HR about Juarez and his racial slurs and about his taking a photo of Plaintiff.

17. Taking photos while on MWPC's premises is specifically prohibited of all employees.

18. On September 12, 2019, Defendant's manager submits the photo to managers and erroneously describes the picture of being Plaintiff sleeping at his desk – when he was supposed to be working. This was untrue, Plaintiff, being a salaried employee, arrived forty minutes early that day and was on break at 4:55 PM as the clock was turning to 4:56 PM and others were leaving for the day.

19. When asked to explain, Plaintiff provided evidence to defendant of his being active up to the point when he went on break.

20. Defendant advised Plaintiff that he was not to come into work on September 13, 2019, pending an investigation. Manager Juarez remained at work.

21. For a third time, on September 16, 2019, Plaintiff complains to Defendant's HR about manager Juarez's racial slurs, character assassination, and defamation.

22. Again, on September 17, 2019 Mr. Haddad asks Juarez for expense reimbursements like other non-Middle Eastern American employees were being reimbursed. Manager Juarez sends the on to upper management and says he would not grant the expense. The request was ignored.

23. On or about September 19, 2019, manager Juarez receives a written reprimand from Defendant for using racial slurs which he admitted using against Plaintiff.

24. On September 19, 2019, Juarez emails Plaintiff's boss and complains about

3

Plaintiff's work quality, his inability to write computer code, and a complaint from a non-Middle Eastern employee that worked with Plaintiff. In fact, Plaintiff was called by that employee, likely as a ruse planned by Defendant's managers to get Plaintiff in trouble, to help her out with her PC.

25. As to his work quality, Plaintiff was complimented on frequently as to his work quality and compared as being better to his predecessors by a majority of the staff. For example, he was told he was better than the last person Defendant had in IT.

26. Plaintiff's IT experience spans several years, prior to Defendant he worked for an IT consulting firm as a Network Systems Engineer doing Network, Server, Virtualization, Cloud, and general IT support. He worked for the Federal Aviation Administration, Chicago Department of Aviation, Illinois Finance Authority, Illinois State Police - Bureau of Identification, A professional architectural firm, The City Colleges of Chicago, and numerous small businesses for website management and server hosting. Each of these environments rivaled the technical challenges he handled at MWPC. He brought the defendant experience similar to being responsible for ten of Defendant's IT environment - all at the same time!

27. This subterfuge carried out by defendant's managers was a violation of Defendant's "rumor spreading policy" yet these non-Middle Eastern employees were not reprimanded despite the Defendant's policy warranting discipline up to and including termination for such acts.

28. On September 20, 2019, Plaintiff refutes the claims waged against him by manager Juarez.

29. On September 20, 2019, Plaintiff's employment is terminated by Defendant allegedly for violating company policy.

30. Manager Juarez was not terminated. Neither was the Caucasian female that colluded with this manager to make a false accusation against Mr. Haddad.

31. Due to the termination of his employment with the defendant, Plaintiff has lost an $85,000 annual salary and other benefits of employment with MWPC.

32. MWPC has several hundred employees and is subject to federal laws prohibiting discrimination such as The Civil Rights Act.

## COUNT I –DISCRIMINATION

33. Plaintiff here re-alleges all preceding pleading paragraphs.

34. Plaintiff, against his will, was required to report his demographics to Defendant as a condition of employment.

35. Plaintiff worked in an environment where the managers would incorrectly assume Mr. Haddad's long heavy coat was traditional Arab garb, a thobe. It is very unlikley to confuse a navy blazer with a long white middle eastern man dress (thobe or dish dash) which supports the Defendant's managers and agents deliberately lying about Plaintiff.

36. Plaintiff worked in an environment where the managers and other non-Middle Eastern employees make frequent jokes of mass genocide of Arabic and Persian nations such as Syria and Iran.

37. Plaintiff would be accused of random accusations by the defendant's managers such as leaving the water running in the bathroom yet when plaintiff refuted the claims managers did not believe him; Defendant's acts were tantamount to profiling of plaintiff because Defendant believes non Middle Eastern white employees and profiles Middle Eastern Employees to be always up to no good.

38. Plaintiff reported to Defendant that its non-Middle Eastern employees were committing such acts and violating MWPC's policies rules by, among other things, using racial slurs.

5

39. Defendant's managers would not treat Mr. Haddad fairly when they purposely ignored and thus refused him expense reimbursements that were freely given to other non-Middle Eastern employees.

40. In its employment practices, MWPC favors white non-Middle Eastern employees over Mr. Haddad. Particularly, MWPC ignored the complaints of Plaintiff while acknowledging and remedying the complaints of the non-Middle Eastern employees.

41. Defendant fired Plaintiff.

42. Plaintiff was stripped of valuable employment benefits, e.g. vacation, health insurance, Keycard, and computer logins.

43. For no other reason than his being Middle Eastern, MWPC intentionally terminated Plaintiff from his IT position and denied him the regular benefits of employment while he was employed by Defendant (e.g. expense, comfortable working conditions, recognition of his complaints).

44. Even after he was terminated the defendant continued to treat Plaintiff differently when the Defendant refused to communicate why Plaintiff was terminated despite Plaintiff asking multiple times and explaining that he wanted to know for legal reasons to inform the EEOC or his attorney. Defendant's non-Middle Eastern employees are routinely given service letters or written discharge papers advising of a reason for termination.

45. MWPC had full knowledge and recklessly ignored its violation of the racial discrimination laws when it terminated Plaintiff and stripped him of his employment benefits based on his being Middle Eastern; In fact, Plaintiff forewarned MWPC management of the consequence of their actions for discriminating against him, that they should not be doing so.

46. Except for his being Middle Eastern, there is no other reason to explain why MWPC

terminated and stripped Plaintiff of his employment benefits. Any such reason would necessarily be a pretext.

47. MWPC discriminated against Mr. Haddad by his country of origin as a determining factor in its employment decisions against him.

48. MWPC's managers, Plaintiff's bosses, while acting as managers for MWPC, recklessly disregarded Plaintiff's right not to be discriminated or retaliated against; particularly so when management intentionally refused to acknowledge his complaints of racial slurs by management and instead suspended him for violating a policy but not doing the same to others who violated the policies of Defendant.

49. At the time of these discriminations Plaintiff had passed all necessary requirements to qualify highly for his work. He had a good work record. Because of these factors, if Plaintiff was from other Jordan and Syria, he would have received the respect that other non-protected employees and managers received.

## COUNT II – RETALIATION

50. Plaintiff here re-alleges all preceding pleading paragraphs.

51. After Plaintiff complained about the racial slurs used against him by manager Juarez, MWPC allowed the manager to persist in his acts without reprimand, an offense that warrants reprimand for any MWPC employee; Not until Plaintiff was going to be terminated did Defendant choose to do so.

52. MWPC management specifically ignored Plaintiff's requests for expense reimbursements after he complained about the racial slurs he received by management.

53. MWPC management specifically staged a violation of company policy by Plaintiff after Plaintiff complained of racial slurs he received by management. Plaintiff was fired four days

7

after complaining so.

54. After Plaintiff complained about the racial discrimination, MWPC's managers ignored Plaintiff's complaints that MWPC's managers were harassing him, making work difficult for him and creating a hostile work environment to which Defendant contributed and condoned. Plaintiff was described by Defendant as raising suspicion/being suspicious which can be for no other reason than his being Middle Eastern.

55. Plaintiff refuted the counter allegations against him that were waged as retaliation and provided Defendant with undeniable video and photo evidence that was ignored by Defendant and its HR department – Plaintiff did not receive a fair HR investigation as other non-Middle Eastern employees do.

56. Too, Defendant refused to believe Plaintiff's clear explanations for his alleged napping, yet Defendant believes the explanations of other non-Middle Eastern employees and chose not to believe him in retaliation for his complaining about discrimination.

57. As a result of Plaintiff complaining, Defendant and its managers began a campaign to assassinate his good name and character when they, among other things, published that he did not know how to program SQL.

58. Plaintiff has been subjected to different MWPC work standards and policies than other employees solely because Plaintiff complained about MWPC's discrimination against him due to his being of Jordanian and Syrian descent.

59. The general culture of the Defendant was such that management did not assist him when he complained orally about the ill treatment he was receiving because of his being Middle Eastern, allowed the MWPC manager's discriminatory abuse to be carried out without recourse, and was generally one of a hostile nature toward himself as a Middle Easter IT professional.

60. Because of the Defendant's retaliatory acts, Plaintiff has been terminated and his reputation has been smeared. He lost wages, he was denied the opportunity to work in a position without the threat of further ill treatment, and he has been humiliated in the presence of other employees of the Defendant that support his work for MWPC, e.g. the accounting staff.

61. Defendants have violated Title VII, and will continue to violate Title VII if not enjoined, because MWPC maintains policies, programs, and classifications that impermissibly discriminate on the basis of national origin. Accordingly, defendants have taken personnel actions in violation of the purposes of Title VII that such policies be free from any discrimination based on national origin.

## COUNT III – DEFAMATION

62. Plaintiff here re-alleges all preceding pleading paragraphs.

63. Defendant and its managers published amongst themselves and to other employees written communications with the lie that Plaintiff, an IT specialist, did not know how to write using SQL computer programming language; that his IT work was not good enough to ask for help; and that he used the "f word" while talking with a female worker. (**Ex. 2**).

64. As a result of the publication of lies about the plaintiff's occupation and Defendant's reckless disregard for looking into the truth, Plaintiff has suffered and the esteem of his colleagues and others to him have been severely diminished.

WHEREFORE, Plaintiff respectfully requests that this court enter a judgment for Plaintiff and award him (a) A permanent injunction prohibiting MWPC, and its employees, agents, officers, representatives and servants from discriminating on the basis of national origin to make job duty, termination, hiring, promotion and other employment decisions; (b) A declaratory judgment that MWPC, violated, and is violating, Plaintiff's rights under the Civil Rights Act; (c) An award of

damages to Plaintiff for liquidated damages, lost wages, future wages and lost future earning capacity, compensatory damages and an amount for his mental anguish, punitive damages arising from the MWPC manager's reckless disregard; (d) An award to Plaintiff for attorney's fees and costs of suit; and (e) An award of such other relief as the court may deem just and proper in the premises.

Respectfully submitted,

/s/Daniel Zamudio
Daniel Zamudio, Ind# 26942-45
Zamudio Law Professionals, PC
233 South Colfax
Griffith, Indiana 46319
Phone (219) 924-2300
Fax (219) 924-2401
dan@zlawpro.com
*Attorney for Plaintiff*